Your Honor, in this case, Order of Appeals, 2-16-0, we are resisting the order of the people of the state of Illinois to give an affidavit in the name of William Wise to defend his account. We are hereby ordering the defendant to present his district attorney, and we are hereby ordering the defendant to present an affidavit in the name of Sally Angel Swiss. Are you both ready to proceed? Counselor Lynn, are you ready? Yes. Good morning, Your Honors. May it please the Court, Counsel. My name is Darren Miller. I'm with the Office of the State Appellate Defender, and I represent the appellant, Willie Wise, on this appeal. Your Honors, Mr. Wise was found guilty of armed violence and was sentenced to 23 years in that offense, and he was also found guilty of multiple counts of unlawful use of a weapon by a felon, sentenced to 14 years. At issue here is whether Mr. Wise was found guilty beyond reasonable doubt of armed violence, and essentially that involves looking at the scope of the armed violence statute. In this case, Mr. Wise was armed outside of his apartment in a bar on the lower level where his apartment was, and the drugs were found inside his apartment, and so we're not disputing that he was in constructive possession of the drugs or that he was armed. However, there is no evidence that the weapon was used in furtherance or had anything to do with the underlying predicate felony. But if you use the term nexus of proximity that has a certain appeal to it, you're saying that because he had the gun but the drugs were not in his immediate possession and control, is that part of what your argument is? There's no concurrence of the elements? Yeah, I mean, there could be certain instances where he could not be in close proximity to the drugs, such as, for example, if he were in southern Illinois with a gun collecting on a debt for the drugs in the apartment. Our real argument is that there is absolutely no connection between being armed and the predicate felony. What about the argument that he could have resorted to violence, and this is a hypothetical argument, to protect his drug stash and his weapons upstairs? I mean, he was in the same building, was he not? Well, yeah, he was in the same building per se, but he was not inside his residence and the bar. He was actually a security guard at the bar, and there's no evidence. I mean, I think you could look, as far as the threat, you can actually look to the Illinois Supreme Court Smith, where the defendant was clearly in his apartment and he was armed and had drugs. The police came to execute a warrant. The defendant threw the gun out the window, and the Supreme Court said, well, we looked at the legislative intent. Well, because there was no potential for violence once the gun was on the ground outside the window. Right, but there was still a potential of violence. Up to the time he had the gun, he could have picked it up a little bit and started firing, and I think that would be something that the armed violence statute would encompass. But I think also what you can get out of Smith is that I think part of the dispute here is the state has a very limited view on how they're interpreting this statute. Under their view, well, Mr. Weiss was armed and he was committing a felony. Was it a felony possession of controlled substance, or were you dealing with a felony? It was possession of controlled substance. So, I lost track of my slide, but basically under their view, it doesn't matter. Like, for example, if I possessed .1 grams of cocaine at my house in Naperville, and if I were carving a turkey with a knife with a three-inch blade for Thanksgiving at my parents' house, under the state's view, I'd be armed with a Category 2 weapon while committing the offense of possession of drugs. But then we look, like Smith did, for this legislative intent for the possibility of violence. Where's the possibility of violence while you're carving a turkey to protect the drugs in your... But there was, see, here there is no possibility of violence because Mr. Weiss had no idea they were going to execute the warrant. He was playing a video game, was armed, admittedly. In your brief, you said it would be okay if the drugs were in the same room or the same residence. Do you agree with that? I mean, is that your argument, that if the drugs are in the same room or the same residence where the person's armed, then that satisfies the statute? Yeah, I mean, thinking about that in more detail, I think, in my view, there's likely some connection between the gun and the drugs. Where do you find that in the law? I think when you look to the legislative intent. Because I think part of the problem here is when the state only focuses on subsection A2 of the armed violence statute. But there are three sections to the armed violence statute. The first section is basically the preamble, and that sets forth the legislative intent. And A3 is the sentencing provision. But under their view, they're essentially ignoring the preamble. And the preamble, if you look there, the legislature findings, is the use of a dangerous weapon in the commission of a felony as a greater threat. Well, he wasn't using a dangerous weapon, and he certainly wasn't using it in the commission of the felony of possessing the drugs. There's no evidence of that. I'm going to take back something you said. If the guns and the drugs are in the same residence, which, albeit it's different than we have here, you would still need a showing of some connection between the guns and the drugs. Other than the fact he's in possession, what kind of a connection are you talking about? Yeah, I mean, the drugs don't have to be on his person, do they? No. No, I think the case law is clear that there can be constructive possession. I don't know that a lot of the cases have actually addressed that particular issue and broke it down. But under my view, if you just happen to be possessing a gun, being armed, in your house, and you have drugs that you're not actively engaging in the felony, but just you happen to possess it but you're really having nothing to do with at the time, then I'd say, no, that's not armed violence. But if you are at your table armed and using the drugs or— So even if you have the drugs in your pocket and the gun in your belt, your argument is there's got to be some nexus there between the drugs and the gun. No, I would say in that instance you're actively possessing. So this is just a constructive possession issue. Right. Okay, so let's say the drugs then are more than an arm's length away in a drawer, but I'm sitting next to the drawer, but then we still have to have a nexus that that gun is being used in some way in the furtherance of possession. I would say that you still have to establish a nexus. Can it be circumstantial? Sure. Like, for example, if he's got just a giant pile of cocaine and scales and all sorts of evidence of drug dealing, he's armed, then I think there's pretty good evidence that being armed is connected to the possession of the drugs as opposed to just some personal use or whether there's really no nexus. Does this just be proximity? Circumstantial? I think circumstantially it depends on the evidence, but yeah, I think proximity definitely would be a strong factor in that evaluation. But the thing is here, it's like there's no proximity, and he's, at a minimum, you'd have to be in the same room or residence, and Mr. Weiss was not even in the same room or residence. Well, he's in the same building. Yeah, but... He's on the first floor. The police come in announcing a search warrant. There's no potential, then, in your mind. Again, the case law talks about not what is the actual intent of the person, but what's the potential for violence. So there's no potential for violence that when the police come in, this guy knows I've got a bunch of drugs and a bunch of guns upstairs, and the police are coming in to search this place. Well, he didn't know that the police were coming to search the place. No, no, when they appeared. I'm talking about the potential for violence when the police appeared. Yeah, I believe that the people, maybe I'm not remembering the facts correctly, but I believe that since he was playing a game, the police walked up to him. I don't think, in this instance, he had any time to react. And being in the building, that would pose no more danger than if he were outside the building or a half block away. There's always, anytime anyone's armed, legally or politically, there's always a potential for danger. What the legislature talks about, and it's in the statute, is it has to facilitate the use of a firearm greatly facilitates the commission of a criminal offense. Well, this firearm was not being used to facilitate the commission of the criminal offense. Why wouldn't the legislature put that in the elements? I mean, the preamble isn't the statute. The preamble aren't the elements of the statute. They're not the elements, but I guess the flip side of that is why, when the vast majority of criminal statutes do not include the legislative intent, why would the legislature specifically include the legislative intent in the armed violence statute? And I would say it's to preclude convictions that would go against what they intend, and that's that they intend there to be some type of a nexus between the weapon and the predicate felony. Does the nexus have to be physical? What's the nexus you're talking about? I'm not sure I understand the question. Well, I mean, can somebody armed with a weapon in this scenario downstairs be in constructive possession of drugs upstairs? Sure, he could be in constructive possession. Like I think I said earlier, if he were in the bar, and the state presented evidence that he and another person were running drugs up from the apartment and he was standing guard, then, yeah, the gun is connected to the crime. Then they would have an armed violence here. They're just taking two independent things. Oh, he's possessing drugs, and he's armed with a firearm, and they're morphing them together from an armed violence conviction, which is clearly against the legislative intent. Well, how do you respond to this argument? The only nexus would have to be the concurrent commission of the predicate felony, possession of the drugs, at the same time he's accused as armed with a dangerous weapon. Allegedly he's armed with a dangerous weapon and he's in possession, and the predicate felony is in possession. Well, I think I can answer that question. My answer to Justice Brooks' question is I think if you're in actual possession, it's different than constructive possession. I think it's almost like committing a crime, almost actively committing a crime versus passively committing a crime. If you're possessing the drugs and you have a gun on you, well, you're actively committing the crime of possession. But, you know, if you're, you know, what if I bought drugs five years ago and they're in my house, and going back to my other example, and I have a bludgeon someplace miles away, I mean, in that instance, there's no relation to it. Unless you're carrying the bludgeon with you. Yeah. Well, if you're carrying the bludgeon with you with the drugs, then yes. Here's my question is what's the scope of the statute? Can it be in this fact pattern, the drugs are upstairs in an apartment, defendant's downstairs in a bar. I assume his apartment is locked, right? There's no direct route from the bar to his apartment. I mean, you've got to go outside up the stairs or something. Yeah, I'm not sure if there was two entrances, I can't recall. Well, the bar is not part of his apartment. No, no, it's a separate house. So how far away can the defendant be before he's not committing armed violence? Or is it sort of infinity? Here's my view if I were king or whatever. You're just here. Right. That's why I said if. But, yeah, if you're actively, if you can show that the gun is actually being used to facilitate the commission, then you're always going to have it. That aside, at a minimum, it should have to be, if you're going on a constructive possession case, at a minimum, the defendant should have to be in the same residence as the predicate drugs. So there is a physical proximity thing that you're arguing, correct? Well, proximity is a factor, but it's not the sole determining factor as to whether or not the armed violence statute is triggered. So your thing is in furtherance of it. Because you did talk about a proximity nexus in the brief. Right. As almost like the standard. But now what you're saying really is it's not a proximity nexus per se. It's in furtherance of it. Proximity may be a factor. I think of nexus as in furtherance of. I mean, the nexus connected to. And, yeah, in proximity, it does play a factor. I mean, it clearly plays a factor. I mean, if he's armed in his own house downstairs and lives in a mansion and there's a small amount of drugs in the west wing of his mansion and he's in the east wing or whatever, that's different than having the drugs two feet away. I believe most of the constructive possession cases are just like, yeah, the drugs are right here under the bed or on the night table, just right around the defendant. I'm not aware of any cases where the state has prosecuted a defendant for armed violence where in circumstances like this. And I think the reason why is because most prosecutors would see that this is outside the scope of the armed violence statute. It's not the intent of the legislature for cases like this to be caught up in this web. And I did list some examples of when I think that he would actually be guilty. Well, I guess I could finish that up in my thought. Do you have any other questions? Thank you. All right, you will have a chance for the bottom row. Good morning, Your Honors, counsel. Your Honors, I think there's a problem with this whole argument being made by the defense in terms of trying to engraft basically something onto the statute that's not there. What we have is language that says if a person commits an armed violence, excuse me, a person commits armed violence, when while armed with a dangerous weapon, he commits any felony. Okay, we have that here. Now, the question is, I guess, he's looking at that language while armed with a dangerous weapon and saying that that's got to still further the legislative intent. But even looking at that, there's no way to draw a line in the sand and say that outside of an apartment is not okay, inside an apartment is okay. Because even under his understanding and his reasoning, and I'm talking about the defense now, the defense reasoning is that it has to have some type of nexus. It has to have some type of furtherance of the crime. We can get that here. And so just to suggest. So what is it here? Wait, wait, you're saying here there is a connection? Well, there is a connection in the sense of defense is presenting it. Both in terms of proximity. There's no way to draw a line in the sand and say this is where you can stand and this is where you can't stand and this is okay and that's not. But if you're saying that this person is in the same building, his building, which has an entrance or a stairway that goes up to his apartment. So where he's in the bar, the officers can see to that stairway that goes up to his apartment. We know that he's been charged and found guilty of possession of heroin with the intent to deliver. So the jurors found that that was forced out. So we can look to a prior criminal history in determining whether or not the statute has been fulfilled here? That's not the prior criminal history. That is what the jurors found in this case, but then that merged into another count. But they found that here that at the time that he possessed it with the intent to sell it. So there's basically a drug business going on here, and that was determined by the jurors here. So what we have is a felony committed within the same building where he is looking at a staircase or can certainly see a staircase if he cares to, the defendant, and anybody going up and going down. Now, in terms of the actual language of the statute, we have that. He's armed and it's on his person. The gun is on his person. And in terms of the legislative intent to stop or to prevent the potential, and that's very important because I think what the defense is doing here is looking at, well, he didn't have enough time when they came upon him to actually use the gun. There are a couple of cases, and they're cited in our briefs, that talk about how it is the potential for violence, not the actual intent, not that he actually did use violence, but the potential. We have officers coming to investigate criminal activity with a warrant and serve it upon him, a search warrant, and serve that upon him while they are also serving the warrant upstairs to search the apartment. And there's where the potential for violence comes in. Well, you're saying this that even though it was not in his immediate possession and control, he was still in the same building, he could have resorted to gun violence just by going upstairs to try to thwart the discovery of the firearms and the drugs. It has to be part of your argument. Well, that's part of my argument. And part of my argument is that even when they come to search him and he sees that there's officers descending upon this building now and that they're looking for criminal activity, that when they come to see him and to take him to arrest him eventually after they find that he's got the gun, there's a potential for violence too. How do we view the word use in the legislative findings, the use of a dangerous weapon in the commission of a felony offense? Exactly as it sounds, Your Honors. He is committing this felony at this time. He's committing possession with the intent. And, you know, he uses very extreme examples to say, well, it can't cover everything. I guess what I would take that back to is that we're looking at normally the legislature figures that if you're committing the crime and you're armed, there is, if you will, a factual inference there from the facts themselves, that the dangerous weapon is being used in part or in conjunction with this, you know, this underlying felony. In this case, we have that because we know he's a drug dealer. We know that he's obviously in a trade where people do arm themselves, where he is available merchandise, and it's not always, you know, the person coming to, you know, bring. Is there any evidence that he has ever sold a controlled substance in that bar? There's not, no, Your Honors. There's not in the trial or anything else. There's actually the investigations themselves, it shows on the record, have something to do with weapons. And then another, there's another law enforcement group that it comes about to, and they were investigating him for selling drugs. So, but we don't know where he was selling those drugs, whether it was, you know. Does that matter? I don't believe it does matter, Your Honors, because the drugs themselves are in the apartment. That's what he's guarding. He's guarding himself and he's guarding his drugs. And he's in close proximity, but there's also just, there's a factual inference there that he's, you know, he's not using that gun, we know that. He's not using the gun as a security person. That the state rebutted by bringing in the owner of the bar who hired this person and said, no, we not only don't want our security to carry guns, we actually tell them not to carry guns for anything to do with the security. So he's not carrying a gun for any other purpose that's suggested on this record. And with that in mind, given the proximity and given the fact that he is in a trade that often requires some sort of arming in order to protect your stash and in order to protect yourself, there's a fair inference there that I think arises just like it does in most of these cases. So I don't see this case as being out of the ordinary in any sense. There is a commission going on. How is this hypothetical with the hunter in Southern Illinois? I mean, is that person guilty of this offense? Your Honor, there isn't an inference. In fact, I would suggest that unlike this where there's an inference that it has to do with it because he's not only in the normal things that happen when you're committing a crime and you're armed, he's in proximity to the crime being committed, and there's nothing else to show any other reason for why he would be armed. I'm sorry, which he, the hunter or this defendant? In our case. But if you're down in Southern Illinois at a point where you can no longer be guarding your stash and obviously nobody might know that you're even a drug dealer, there's no indication that you would have to make incredible lengths to go get your drugs and to do some sort of transaction down there. There's not a general inference that flows from most of these cases the way they do in our case. Can I infer from your response then that you agree there has to be some connection, but here you think the evidence supports that connection? Inference, connection, whatever word you want to use. I do believe that generally the way the statute is written, it anticipates by the very virtue of the language used that there's some connection ongoing there, that it's not, you know, like if you brought in evidence, the defense brought in evidence that he was carrying a gun for a very different reason or if just the facts themselves, something like being in a different continent and your drugs are here or you're in a different state and you're charged with having a gun here, there's no connection at all. Yes, I mean, I think that the statute does at least anticipate that there is a connection. And the Supreme Court said that that connection is the potential for violence related to the felon. That's right. So that really generally comes from sort of factual inferences that can be drawn and the fact that by virtue of how the facts turn out, that they show that there is a potential for violence that comes from the very fact that you're committing this crime and that you have this gun. And in this case, we have that. There was the potential for violence, even if not acted on. But again, potential for violence as related to this felony. Well, as related to, but I think it could be more than this felony. I mean, if your honor's, you know, if I'm looking at it in terms of he also had guns up here, it doesn't have to be solely related to this, but it certainly, there's an inference that it's related to the drug dealing. Could it also be related to the fact that he has guns upstairs? Of course. Okay. And your honors, in our brief, we asked that you would affirm, obviously, the convictions for the defendant. But I did want to ask that if for any reason your honors decide that the armed violence cannot stand, that this case would be remanded. And that's because there was count five unlawful possession of heroin with intent to deliver that the court determined was merged into, I think, as sort of an included offense. He said it was in the offense of armed violence. And we would ask that that would be sentenced if for any reason the armed violence is determined not to be able to stand. Briefly addressing issue number two, as far as the reliability here, we have an affidavit that shows that the defendant, excuse me, that the confidential informant was very familiar, intimately familiar with what was inside of the defendant's apartment. He listed 13 guns. And of those, I believe, 10 of them he was able to give calibers, he was able to give makes of some of them, or at least the type of gun that they were. Was that really the focus of his argument on the suppression? It seemed to me he's arguing that there's no reliability because even though in the facts he'd have to concede, the informant appeared before the judge, he seems to be making the point that the law requires a little bit more than that, that the judge actually questioned the informant in terms of reliability. So in this case, the record does not reflect there was any actual questioning, correct? Well, that's not correct. I think what's on the search warrant makes it clear that one of the complainants at least was examined. By who? By the court. By the judge? Yes. But it does not explain because the usage of complainant went to both the John Doe and to the officer. So it does not explain which person. Okay. So let's assume for the sake of the argument we find there was no on-record colloquy between the judge and the informant. Is that fatal to the warrant? No, Your Honor, it's not. But can I stop you there because our argument is that on the motion to suppress, it would have been the defendant's burden to show, and that's 5114-12, it's the defendant's burden to show that there was not probable cause for the warrant. He had Officer Cashel on the stand, the defendant didn't. He was pro se at this time, so he was the actual person who was examining him. He never asked whether it was the officer or whether it was the CI who had been examined by the court. He could have, and then he could have made an argument that that's ambiguous. He never brought up any ambiguity at all in terms of that. And the judge from the very start made it clear he thought that the informant had been examined. And even later, at various points, even after the ruling on the motion to suppress, defendant, again pro se, tried several times to bring it up again, never argued that, in fact, there was an ambiguity, never argued that there was some way to determine that, and it would have been his burden to show that. As the impoundment, it's also his burden to show that, in fact, if that was ambiguous, that it was error, that the complainant, excuse me, that the CI was not the person who was examined. Because if the CI is examined, we know from case law that that's sufficient for the liability. So it was his burden, he didn't carry it. And when he hasn't carried it there and can't show that it's an error, then it's our position that that cannot be counted against the state and said, well, the record doesn't show that. It is different than the cases cited by both sides in terms of it, because I didn't see a case like this, but by both sides where there is just nothing at all about any examination taking place. Here, the court, it looks like, examined the complainant. It was up to the defendant, as the proponent of the motion, to carry that burden by asking Cashel whether or not, in fact, it was the CI who was examined. The affidavit was signed by the officer, not the CI, correct? By both. It was signed by both? Yes. Yes. And I have made an argument, and I will rely on it. It's in my brief, that even without the CI having been examined, should this court determine that there's not enough information, our alternative argument is that it's still sufficient, through the specificity of the guns, where they were located, the defendant having been there, in terms of this apartment, and that the CI also had been there within 72 hours. So that's looking at the totality of the circumstances? Yes. Do you agree, or are you abandoning your argument that, without questioning the CI, the appearance only of the CI is enough to establish that? I'm going to withdraw that argument, that without it. Do you think that Smith and Johnson, these cases are the trend in the law? Yes, Your Honors, I do. But finally, we would say that if Your Honors disagree in any sense, then there is a good faith exception here, and it does apply, because certainly this is a case where there are a lot of facts, and they are put forth in the affidavit, and they are relied upon by the judge in the search warrant, as well as an examination of the complainant, whoever that individual is, that shows and would allow any officer to have a reasonable belief in the validity of the warrant. So for that reason, we believe that defendant's convictions should be affirmed. Any other questions? Thank you. Do you wish to offer a rebuttal argument? Counsel, can I start off by asking, your opposing counsel pointed out that your client was convicted also of possession with intent to deliver these drugs upstairs. Does that have a bearing on the in furtherance? I don't think so. I think just based on the quantity and the way the drugs were, I don't think there was any, again, there's no, if they would have, if that would have had anything to do with it, that would have not been a rational conclusion. There's no evidence that he was involved in any, actively involved in any drug dealing. He was convicted of possession with intent, not of actually delivering. You have to agree, or maybe you don't, that that takes you at least one step incrementally closer to this furtherance, though? As opposed to just possessing drugs for your own use, isn't the potential for violence greater if you're actually possessing them with the intent to deliver? Yeah, I mean, I think in my example, I made the distinction that if he were inside the apartment, and armed, and there was evidence of intent to deliver, that's more likely to be an armed violence scenario, and probably is an armed violence scenario, as opposed to if someone just has a small amount of personal abuse. But that's not the situation here. The situation here is he's not in the apartment, and he's not with the drugs. And I think that's a critical distinction. And I also think it's interesting that the state, if I heard correctly, basically admits that in the hunting example, that that's not armed violence. Yet, if my recollection is correct from the briefing, the state was very strict. Like, you look at the elements, and if someone's armed with a dangerous weapon and committing a felony, you're guilty. Well, in that hunting example, the person's armed, and under their view, no matter where the person is, he's committing the constructive possession, guilty. So the state essentially concedes that you don't just go by the elements as set forth in A2, and you do look to the legislative intent, and the preamble is pertinent here. And again, the legislative intent explicitly says to deter the use of firearms in the commission of a felony offense. That's not here. And so I think clearly under the facts of this case, Mr. Weiss is not guilty of armed violence. And unless there are further questions, I'd ask that you reverse this conviction. Counsel asked that if, should we undertake that, that we then remand for sentencing on, I think it was count five. What's your position on that? I mean, I haven't thought about it, but off the top of my head, I think that sounds reasonable. I mean, if convictions merged into that, I think that would be good. I just want to give you an opportunity to respond to that. Any other questions? All right, thank you both very much. There will be a written decision entered in due course, and we will be in recess until the 9.30 hours.